In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00181-CR
NO. 09-22-00182-CR
NO. 09-22-00183-CR
NO. 09-22-00184-CR

_____

**MATTHEW BRYAN RICE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 20-05-05820-CR, 20-09-11175-CR,**
**20-09-11177-CR, and 20-09-11178-CR**

**MEMORANDUM OPINION**

In open plea agreements in trial cause numbers 20-05-05820-CR, 20-09-11175-CR, 20-09-11177-CR, and 20-09-11178-CR, Matthew Bryan Rice (Appellant) pleaded guilty to four counts of possession or promotion of child pornography, each a third-degree felony. *See* Tex. Penal Code Ann. § 43.26(a). The trial court accepted the pleas and deferred findings of guilt until the completion of

1

the presentence investigation (PSI) report and a punishment hearing. Upon the completion of the PSI report and after a punishment hearing, the trial court found Appellant guilty of each count, sentenced Appellant to ten years of confinement for each count and ordered that the sentences run consecutively. Appellant filed a motion for new trial based on ineffective assistance of counsel, which was overruled by operation of law, and he then filed this appeal. In his sole issue on appeal, Appellant argues the trial court abused its discretion in failing to hold an evidentiary hearing on Appellant's motion for new trial. We affirm.

## Punishment Evidence

### Testimony of Detective Cory Arnold

Detective Cory Arnold with the Montgomery County Precinct 4 Constable's Office testified that he works for the High-Tech Crimes Division and is a member of the Internet Crimes Against Children Task Force. According to Detective Arnold, he assisted in executing a search warrant in 2020 at Appellant's home, where Arnold collected an "HP laptop" located in Appellant's bedroom. Detective Arnold turned the laptop over to Detective Samuel Morris, the "case agent" and a detective with the Conroe Police Department.

### Testimony of Detective Samuel Morris

Detective Samuel Morris with the Conroe Police Department testified that he had been a police officer for nine years, had been assigned to the Internet Crimes

Against Children Task Force for over two and a half years, and was trained to investigate internet crimes against children. According to Detective Morris, in April of 2020 he was given a cyber tip, generated through the National Center for Missing and Exploited Children, about images of sexually explicit material of children, and the cyber tip ultimately resulted in Matthew Rice's arrest. At trial, Detective Morris identified the defendant as Matthew Rice.

Detective Morris testified that the cyber tip "came in through Snapchat through a reportee[,]" regarding six images of what was believed to be child pornography. Detective Morris testified that the six images sent were a representative sample of the images that were being uploaded by a suspect. According to Morris, when he was assigned the cyber tip, Wendy Perales, who was with the Houston Police Department and also part of the Internet Crimes Against Children Task Force, had done some investigative work and "had already sent subpoenas out and she got returns to a 33 East Wandering Oak Drive in Spring, Woodlands, Texas, back to a Robert Rice[,]" Appellant's father.

Detective Morris testified as to what the six images originally sent to him in the Snapchat cyber tip depicted: the first image "a one to three-year-old female" with her vagina exposed and what appeared to be semen on her stomach and vagina; the second image was of two juvenile females appearing to be six to eight years old and two adult males were having the females perform oral sex on them; the third image

was a duplicate of the second image; the fourth image was of a nude juvenile female who appeared to be four to six years old with her genitals and breasts exposed with an adult male "over the top of her vagina with a white fluid which appeared to be semen[;]" the fifth image was a juvenile female that appeared to be ten to twelve years old and performing oral sex on an adult male; and the sixth image was of a juvenile female who appeared to be six to eight years old and performing oral sex on an adult male. According to Detective Morris, in the course of his employment he reviews images of child pornography frequently and, based on his review of these six images, he believed they depicted child pornography. Detective Morris requested a search warrant for the 33 East Wandering Oak Drive address.

Detective Morris executed the search warrant on May 14, 2020, and he noted that there was another cyber tip he had received in November 2019 associated with the same address involving a report of images of child pornography using an Instagram account, and he also learned that there was a prior search warrant executed at the same address about fifteen years earlier involving the FBI in relation to searching for child pornography. Morris testified that the search fifteen years ago did not result in any arrests. According to Morris, at the time of the search warrant in May 2020, Appellant lived at the address with his mother and father and Morris went to the scene with forensic analysts triaging some of the electronic devices found at the scene. While on the scene, Detective Morris learned that there were images of

4

child pornography on Appellant's devices, but no images were found on Appellant's mother's or father's devices.

Detective Morris testified that he interviewed Appellant, and Appellant originally denied having social media accounts except for an Instagram where he had a business, "Dulce Deals." Morris agreed that after "some of the triage [was] completed," he interviewed Appellant again. According to Morris, Appellant ultimately told him that Appellant had received images of juvenile females that Appellant believed were "jailbait or fresh faced or suspicious[]" and that "as a precaution he was screenshotting these images for his own evidence in case something like the FBI incident ever occurred again, he would have something to prove that it was being sent to him." Detective Morris testified he asked Appellant if he had ever reported any of that information to law enforcement, and Appellant stated he had not because he did not know if it was his responsibility to do so or not. After interviewing Appellant and observing the images that were discovered on Appellant's computer, he arrested Appellant at the scene for possession of child pornography. According to Detective Morris, he submitted multiple devices to Investigator Jeffery Chappell for analysis.

In addition to the six images uploaded to Snapchat, there were additional images found on Appellant's devices. According to Detective Morris, he observed a video on Appellant's cell phone recording a video from his laptop that depicted a

5

juvenile female masturbating. Detective Morris testified that after a follow-up investigation he was able to identify the victim in the video because Appellant's video showed an Instagram account name and the pictures the juvenile posted listed her location. Detective Morris testified his investigation revealed the juvenile female was twelve years old at the time of trial.

On cross-examination, Detective Morris agreed that Appellant was cooperative while Morris interviewed him, and that Appellant admitted to having the child pornography on his phone.

Testimony of Investigator Jeffery Chappell

Jeffery Chappell, a digital forensics analyst and investigator with the District Attorney's Office, testified he was assigned to the digital forensic unit as part of the Internet Crimes Against Children Task Force, has been in law enforcement for over thirty-two years, and has investigated internet crimes against children for over eighteen years. Investigator Chappell has had extensive experience and training performing forensics and investigations into different electronic digital devices and investigating internet or computer crimes. Investigator Chappell has qualified as an expert in his field in both state and federal court and has examined several thousand devices during his career. When analyzing a computer, he creates a forensic image of the hard drive contained in that device (which is basically a copy of all the data on the device) which is verified, and then he performs an analysis on the forensic

image itself and not the actual physical device. For cell phones, he performs an extraction of the data which is not protected but it is verified and then software is used to put the data into a readable format.

Investigator Chappell analyzed sixteen to eighteen devices related to this case. According to Investigator Chappell, the HP laptop had two hard drives on it with two separate operating systems and one of the hard drives had a Windows operating system with a program called BlueStacks, which emulates an Android smart phone on the computer. Investigator Chappell testified that BlueStacks is "a virtual operating system within another operating system[]" that runs an Android operating system on a computer so that the desktop looks like an Android phone, and the user can use apps that may only be available on a phone. Chappell testified that the program is a "proprietary-type system[]" that is highly customizable because it is made for developers, and that a person with training and experience can change the settings. According to Chappell, BlueStacks's makeup of the file systems and how it works contains very different databases and proprietary code that law enforcement software does not read very well so he has to "basically go in and carve out known files based on the file signature[]," which makes his job harder and he cannot retrieve search and browsing history like he could on a normal computer. Investigator Chappell found evidence on Appellant's devices of BitTorrent, a file sharing program that can be used for legitimate business such as file sharing music and

7

movies, and a BitTorrent user can search for a particular type of video or pictures through all other users using BitTorrent. Chappell testified that these systems are used for illicit purposes and almost every single case of child pornography and online abuse that he has investigated the last few years used programs like BitTorrent. Investigator Chappell also found evidence that external storage devices like USB drives had been used in Appellant's HP laptop, and he located a file name in a path that looked similar to child pornography files Chappell had seen in the past and the drive letter assigned was "F" which matched the drive letter assigned to one of the USB drives that had been attached to Appellant's laptop but that USB drive was not recovered. Based on his analysis of Appellant's HP laptop and associated hard drives, cell phones, and electronics, Investigator Chappell believed Appellant to be "an above average user for computers and more knowledgeable than your average user."

Investigator Chappell found images or videos depicting child sexual abuse on Appellant's laptop and smart phone, and depicting prepubescent children being vaginally penetrated, anally penetrated, and made to perform oral sex on adults. Investigator Chappell located approximately thirty images of child pornography on Appellant's HP laptop, and he was able to carve those images out of the BlueStacks operating system. Investigator Chappell also observed a pornographic video on Appellant's smart phone that Chappell subsequently learned was "an identified

8

juvenile victim." Chappell testified that while viewing the video he could see Appellant's reflection in the video and that Appellant was apparently using his phone to record the video as the video played on Appellant's HP laptop. Investigator Chappell identified the USB drive marked as State's Exhibit No. 1 as the drive including five images and the video where he could see Appellant's reflection as a representative sample of the images that he located on Appellant's laptop and Samsung smart phone, and State's Exhibit No. 1 also included a report with metadata on the video. According to Chappell, the five images are a fair representation of the nature, content, and age of the victims he saw in the other twenty-five images not included on State's Exhibit No. 1. Investigator Chappell testified that the report of the metadata on the video showed that the video was created on Appellant's phone on February 3, 2020 at 7:57 p.m. Chappell testified that it is common in his investigations to see users who access, view, collect, and share child pornography to save and duplicate those images and videos for later use or for later sharing, and that often times users do this on multiple or hidden devices to collect the items or to hide the material from other people in the household or from law enforcement.

Investigator Chappell has attended seminars where known sexual abuse victims have bravely spoken about their experiences, and "the overall take away from it is that every single time these images are viewed or part of a court case or anything else the victims are revictimized again. It just never goes away." According

9

to Chappell, the images are impossible to get back once they have been disseminated, and they can spread very quickly because when an image is downloaded on a smart phone and viewed, three other images of that same image are created.

Standard of Review and Applicable Law

A hearing on a motion for new trial has two purposes: (1) to determine whether the case should be retried, and (2) to complete the record for presenting issues on appeal. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). A trial court is not required to hold a hearing when the matters raised in the motion are subject to being determined from the record. *Id.* A trial court abuses its discretion in failing to hold a hearing if the motion and accompanying affidavits raise matters not determinable from the record and establish reasonable grounds showing that the defendant could possibly be entitled to relief. *Id.* at 338-39. As a prerequisite to a hearing on a motion for new trial based on matters not already in the record, the motion must be supported by affidavit testimony that specifically sets out the factual basis for the claim. *Id.* at 339. "[A]ffidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required." *Id.* The motion and affidavits need not present a prima facie case for a new trial, but the movant "must at least allege facts that show reasonable grounds to believe that he *could* prevail under *both* prongs of the test for

10

ineffective assistance of counsel under *Strickland*." *Id.* at 338; *see also Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003).

We review a trial court's denial of a hearing on a motion for new trial under an abuse of discretion standard. *Smith*, 286 S.W.3d at 339; *Wallace*, 106 S.W.3d at 108. If a defendant raises grounds that are both undeterminable from the record and reasonably could entitle the defendant to relief, the trial court has no discretion to withhold a hearing and abuses its discretion in failing to hold a hearing. *Smith*, 286 S.W.3d at 340.

Both the United States Constitution and Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.051. This right necessarily includes the right to reasonable effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). With respect to an ineffective assistance claim, our review of counsel's performance is highly deferential, and we make a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *Strickland*, 446 U.S. at 689; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). To overcome that presumption, Appellant must satisfy the two prongs established by *Strickland v. Washington* by demonstrating that (1) counsel's representation fell below an

11

objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see also Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (adopting and applying the *Strickland* test). "Unless [an] appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687). The record must contain evidence of counsel's reasoning, or lack thereof, to rebut that presumption. *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)). Allegations of ineffectiveness must be shown in the record, and the record must affirmatively establish the alleged ineffectiveness. *See id.* Ordinarily, on direct appeal, the record will not have been

12

sufficiently developed during the trial regarding trial counsel's alleged errors to demonstrate in the appeal that the trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012); *Lopez*, 343 S.W.3d at 143.

"To show prejudice, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (quoting *Strickland*, 466 U.S. at 694).

Analysis

Appellant argues on appeal that the trial court abused its discretion in failing to hold an evidentiary hearing on Appellant's motion for new trial because the pleadings, affidavit, and report were sufficient to put the trial court on notice that a hearing was required to fully develop the issue of ineffective assistance. Appellant filed a motion for new trial asserting ineffective assistance of counsel. In the motion for new trial, Appellant argued that his counsel failed to introduce mitigating evidence by (1) failing to call Appellant's father as a witness to testify to "facts that undermined the State's argument that Defendant 'traded' in child pornography and used his computer skills to deceive or hide from law enforcement[;]" (2) failing to introduce the report of Dr. J. Scott Hickey or call him as a witness regarding his

13

opinions in his report that Appellant "could be safely and successfully monitored and supervised in the community if this supervision included the elements of the well-established Texas Containment Model[;]" and (3) failing to retain a computer forensic expert to review the evidence in the case for the purpose of developing mitigating evidence.[1] In support of his motion, Appellant attached an affidavit of Appellant's father, Robert Rice, and a copy of a Psychological Evaluation report of Appellant by Dr. J. Scott Hickey. According to Appellant, this Court should abate the appeals and order the trial court to hold an evidentiary hearing on Appellant's motion for new trial.

First, we address the allegation of ineffective assistance of counsel for counsel's failure to introduce the alleged mitigating evidence of Robert Rice's testimony and Dr. Hickey's report or expert testimony. The affidavit of Robert Rice attached to Appellant's motion for new trial states that he would have testified that Appellant's legitimate business "Dulce Deals" involved Appellant buying used electronics and drives "as is" that he would later resell, that the computer equipment

---

[1] Appellant also asserts in his motion for new trial that the sentence imposed was contrary to the law and the evidence. Appellant failed to provide any support for that contention in his motion and we note that the punishment assessed was within the applicable range of punishment. *See* Tex. Penal Code §§ 12.34 (range of punishment for a third-degree felony is two to ten years' imprisonment), 43.26(d) (offense of possession or promotion of child pornography is a third-degree felony unless that person has been previously convicted of the offense). On our reading of his appellate brief, he has also abandoned this argument on appeal.

14

found during the search warrant was part of his legitimate electronic resale business, that Appellant's computer setup and file-sharing software was generally used for the benign purpose of running his business and furthering his logistics career, that Appellant did not use the "discrete" operating systems described by the State to obfuscate, hide, or confuse law enforcement, that the search warrant executed fifteen years prior had nothing to do with Appellant, that the State had mischaracterized Appellant as running a sophisticated operation in the "trade" of child pornography, and that Appellant was not "trading" in child pornography and had not optimized his computer systems to deceive law enforcement. The trial court heard Investigator Chappell testify that he found evidence on Appellant's devices of BitTorrent, a file sharing program that can be used for legitimate business such as file sharing music and movies, but that these systems are now commonly used for illicit purposes and that almost every single case child pornography and online abuse case he has investigated the last few years use programs like BitTorrent. Appellant also admitted he possessed child pornography. Evidence that Appellant had electronic equipment commonly and generally used for legitimate business does not mean that he could not have also used the equipment in the promotion of child pornography. And the video evidence obtained from the Appellant's devices also showed Appellant's reflection as he copied child pornography from one device to the other.

15

Next, we examine Appellant's complaint with respect to Dr. Hickey's report and suggestion that community supervision would be appropriate punishment. Here, the defendant chose to have the trial court decide his punishment and on the record before the trial court we find the trial court could have reasonably concluded that the report did not entitle Appellant to community supervision. *See Wallace*, 106 S.W.3d at 108.

During the punishment phase of the trial, the trial court heard and rejected the request made by the defense seeking community supervision and the trial court exercised its discretion and assessed the maximum punishment for each offense and cumulated the sentences. On this record, the trial court could have reasonably concluded (a) that the strength of the prosecution's case was such that the new evidence suggested by the affidavit and report, even if true, was not compelling enough to probably bring about a different result in a new trial and, therefore, (b) that Appellant's motion and accompanying affidavit and report did not show that he could be entitled to relief. *See id*.

Finally, Appellant also alleged ineffective assistance of counsel for counsel's failure to retain a computer forensic expert to review the evidence in the case for the purpose of developing mitigating evidence as to how Appellant "came to possess the[] images[.]" According to Appellant's motion for new trial, "[r]etaining a computer forensic expert and calling this expert as a defense witness would have led

16

to the introduction of relevant, material mitigation evidence that would have a reasonable likelihood of reducing the sentence Defendant received." Appellant's motion and attached exhibits fail to explain who the defense should have called to testify or what testimony the expert would have provided that would have changed the result. *See Smith*, 286 S.W.3d at 339. Appellant's allegations are conclusory and do not specifically set out a factual basis from which the trial court could conclude that his counsel failed to act as a reasonably competent attorney and that, but for his counsel's conduct, the result of the proceeding would have been different. *See Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009); *Smith*, 286 S.W.3d at 341. Because Appellant failed to allege facts from which the trial court reasonably could conclude that his counsel was deficient and that the alleged deficiency prejudiced his defense, we conclude the trial court did not abuse its discretion by failing to hold a hearing on Appellant's motion for new trial. *See Hobbs*, 298 S.W.3d at 200; *Smith*, 286 S.W.3d at 340-41.

Accordingly, we overrule Appellant's issue and affirm the trial court's judgments.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 12, 2023
Opinion Delivered May 17, 2023
Do Not Publish

Before Horton, Johnson and Wright, JJ.